## UNITED DRUG CO. v. WILEY.

### Patent Appeal No. 3597.

Court of Customs and Patent Appeals.
March 23, 1936.

Edward S. Rogers, James F. Hoge, and L. B. Stoughton, all of New York City (Francis L. Browne, Dudley Browne, and Thomas L. Mead, Jr., all of Washington, D. C., of counsel), for appellant.

Howson & Howson, of Philadelphia, Pa. (Kennard N. Ware, of Philadelphia, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents in a trade-mark opposition proceeding affirming the decision of the Examiner of Interferences dismissing appellant's notice of opposition, and holding that appellee is entitled to the registration of the trade-mark "Blurex," for use on "Starching Compounds."

In its application, appellee stated that it had used its mark on its goods since December 20, 1932.

In its notice of opposition, appellant alleged ownership and registration of the trade-mark "Rexall," for use on "Medicinal

.Preparations and also on Preparations for use in the laundry for Cleaning and Bleaching, as evidenced by Certificates Nos. 93,250 and 98,021. * * *" It also alleged ownership and registration of the following trade-marks: "Rex," for use on a medicinal preparation known as "Dyspepsia Cure," Registration No. 35,503, issued November 27, 1900; "Rex-Salvine," for use on an ointment for burns and cuts, Registration No. 260,150, issued August 20, 1929; "Rexillana," for use on cough sirup, Registration No. 227,882, issued May 17, 1927; "Agarex," for use on an emulsion of mineral oil from medicinal purposes, Registration No. 243,302, issued June 19, 1928; "Rex-Mentho," for use on an ointment for relief of colds, muscular aches, headaches, and neuralgia, Registration No. 279,412, issued January 13, 1931; "Alco-Rex," for use on a rubbing alcohol compound, Registration No. 252,348, issued February 5, 1929; "Bisma-Rex," for use on an "antacid power for gastric acidity, sour stomach, acid dyspepsia, heartburn, flatulence, and belching," Registration No. 283,777, issued June 9, 1931. Appellant further alleged that the goods of the opposer had been extensively advertised and sold to the general public, and that the registration of appellee's mark would cause confusion in trade and damage to appellant.

In its answer, appellee denied that appellant's Registrations Nos. 93,250 and 98,-021, of the trade-mark "Rexall," were for use on "preparations for use in the laundry for cleaning and/or bleaching," and alleged that appellant's trade-marks, set out in its notice of opposition, were for use on pharmaceutical and medicinal preparations, the sales of which were confined to drug stores; that appellee's trade-mark was for use on starching compounds, "sold and offered for sale only in grocery stores and the like"; that the goods of the parties do not possess the same descriptive properties; that appellee's mark is not confusingly similar to any of appellant's registered marks; and that, therefore, appellant would not be damaged by the registration of appellee's mark.

It appears from the record that approximately 10,000 "Rexall" stores, located in various cities and towns throughout the United States sell appellant's products, and many items of merchandise other than drugs, or medicinal and pharmaceutical preparations, including preparations for use in the laundry for cleaning and bleaching.

Although appellant alleged in its notice of opposition that it was using the trade-mark "Rexall" both on medicinal preparations and on "Preparations for use in the laundry for Cleaning and Bleaching, as evidenced by Certificates Nos. 93,250 and 98,021," those certificates of registration do not support that allegation. There is nothing in either of them to indicate that appellant ever used the trade-mark "Rexall" on "preparations for use in the laundry for Cleaning and Bleaching." On the contrary, it appears that Registration No. 93,250 was issued on August 26, 1913, for use of the trade-mark "Rexall" on "shampoo-paste, hair-tonic, depilatory, and a parasiticide or insecticide for cleansing and diseases of the scalp and hair," and that Registration No. 98,021, was issued on June 30, 1914, for use of the trade-mark "Rexall" on numerous medicinal preparations.

It appears from the record that appellee has used the trade-mark "Blurex" since December 20, 1932, on "Starching Compounds," such as "starch finish," and "washing and bluing powder"; that these compounds, which are used in the laundry for cleaning and bleaching, are sold to the general public through retail grocery stores only. It further appears that appellee, the Stevens-Wiley Manufacturing Company, has been selling similar products under a trade-mark, the dominant feature of which is the word "Rexblu," since the registration of that mark—December 18, 1917, Registration No. 119,925.

It is argued by counsel for appellant that as the syllable "Rex" is one of its trade-marks, and is used as a prefix or suffix to its trade-marks "Rexall," "Alco-Rex," "Rex-Salvine," "Agarex," "Bisma-Rex," "Rexillana," and "Rex-Mentho," referred to in its notice of opposition, and as its goods are sold in "Rexall" stores, appellee's trade-mark "Blurex" will indicate to the purchasing public that the goods sold thereunder originate with appellant; that, in fact, there is evidence of record tending to establish that such confusion actually exists; that "Two druggists who were accustomed to carrying laundry aids, bleaching preparations, and like merchandise in their stores, on hearing the name Blurex identified it with Rexall. The first said that he had never heard of Blurex and asked if it was not a Rexall product. * * The second druggist said: 'That must be Liggett's, "Rex" stands for "Rexall"' * * *"; that if those druggists, neither

of whom was a "Rexall agent" were confused, the public likewise would be confused; that the Commissioner of Patents erred in holding that the certificates of registration pleaded in the notice of opposition were "restricted to medicinal remedies or toilet preparations, and *there is no satisfactory evidence that any of the marks has been otherwise used.* (Italics ours)"; that there is satisfactory evidence of record tending to establish that the trade-mark "Rexall" is used on the following articles: "Borax," as evidenced by a label attached to the notice of opposition; "Epsom, Salt," as evidenced by Appellant's Exhibit No. 3, consisting of an empty container so labeled; cleaning fluid for fabrics, Appellant's Exhibit No. 5; Peroxide of Hydrogen, used for bleaching purposes, Appellant's Exhibit No. 6; and soap, Appellant's Exhibit No. 7.

It appears from those exhibits that "Borax," "Epsom Salt," and "Hydrogen Peroxide" are sold under the name "Puretest"; that the cleaning fluid for fabrics, formerly known as "Rexall Universal Cleanser," and the soap, referred to, are sold under the name "Elkay's"—the former is denominated "Elkay's Klens-All," and the latter "Elkay's Hand Soap." In other words, so far as we are able to learn from the record, although all of the articles referred to were sold in "Rexall" stores, not one of them was sold under the trade-mark "Rexall."

The mere fact that an article is sold in a so-called "Rexall store" does not necessarily mean that it is sold under the trademark "Rexall," as is evidenced by the record in this case.

Neither the trade-marks "Puretest" nor "Elkay's," if they may be so designated, were mentioned in the notice of opposition, and, accordingly, are not before us for consideration.

We are of opinion that the decision in the case of Purex Corp., Ltd., v. United Drug Co., 67 F.(2d) 918, 21 C.C.P.A. (Patents) 753, is decisive of the issues in this case. Obviously, if the trade-mark "Purex," for use on "a bleach and water softener," is not confusingly similar, as held in that case, with the trade-marks "Puretest," for use on medicinal and pharmaceutical preparations, "Rex," for use on medicines and toilet and pharmaceutical preparations, "Rexall," for use on shampoo paste, hair tonic, depilatory, and a parasiticide, "Rexal," for use on perfume,

toilet water, sachet powders, and smelling salts, "Rex-Salvine," for use on an ointment for cuts and burns, "Rexillana," for use on cough sirup, and "Agarex," for use on mineral oil, the trade-mark "Blurex," for use on "Starching Compounds," is certainly not confusingly similar with the trade-marks referred to by appellant in its notice of opposition.

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.